Thank you. Please be seated. Welcome to the Fourth Circuit. We're ready to hear argument in our first case, United States v. Dennings. Mr. Brignac. Thank you, Your Honor. May it please the court, Eric Brignac for Kevin Dennings. The district court applied a bright line rule to resolve this case, and that bright line rule was wrong. The court held that the Section 3C1.2 enhancement applied because Mr. Dennings, quote, fled from police while carrying a loaded gun, and the gun had recently been discharged. And under the plain language of the guideline, that's wrong. Because as this court and other courts have held, armed flight, without more, does not rise to the level of the gross deviation from the standard of care that the guidelines say is required. And if this court were to adopt the district court's bright line rule, it would effectively convert anything other than immediate submission to the police into the enhancement. The defendant in these cases will always have a gun. This court has held, and I think the law is pretty clearly established, that if he were to dispose of the gun, that would apply the enhancement because of the risk that someone may find the gun and the gun may cause a danger that way. And the district court rule here says he cannot run either. So in that situation, any situation where a defendant had a gun and did anything other than submit would have the enhancement apply. And that is not what the Sentencing Commission concluded. I think the government's brief does a good job of going into the history of this enhancement. And in 1990, the commission decided to separate this out from obstruction of justice. Before then, this conduct was covered under obstruction of justice, but I think the courts all agreed that it wasn't really a good fit for that. So we wanted something to pull out and deal with this conduct in particular. And the commission could have simply said that not submitting to arrest is worth a one-level bump or a two-level bump or however many. It didn't do that. It said that this enhancement would apply if you cause reckless endangerment during flight. And it specifically cross-referenced the recklessness standard for manslaughter. So I would submit this isn't even just recklessness as you learn in your 1L criminal law class. This is manslaughter recklessness. This is a gross deviation from the standard of care. And for the almost 30 years that that law has been on the books and in which this court and other courts have held that mere armed flight isn't enough, the commission has not changed that standard or added anything to the commentary. So if you've got more than armed flight, that can suffice? Your Honor, many things can suffice. And I think the government cites a lot of cases and we cite cases pointing a gun at an officer. And that happened in multiple cases. That happened in the Easter case. That happened in the Hill case. Well, that's brandishment, which could just as easily go to the official victim enhancement. So we don't want to try to read this enhancement out of the guidelines by crossing it over with that. But in this case, it seems like to me you've got more than just somebody running with a gun. Because while the individual was running, the testimony was that they had a hand in their pocket where the gun was. And then when they were finally tackled, they still kept their hand on the gun, armed and resisting arrest. So why isn't that enough in addition to flight to satisfy the guideline? And Your Honor, respectfully, those are two responses. First, those are findings that the district court did not make. And if this court does think that what happened at the moment that Mr. Dennings fell down, the officer landed on top of him, is relevant to the analysis, at most, the government could say you could remand that back to the district court for those findings. What we do have is Mr. Dennings, 5'3", 125 pounds, running, falls down, the officer lands on him. What difference does it make if he's 5'3", or 6'3", if he's got a gun and he's got his hand on the gun? Well, Your Honor, again, the officer did not testify at the sentencing hearing. This was all simply proffered by the government. And I would actually say this may be a case of the dog that didn't bark. In the sense of why didn't the officer testify? The government had the power to bring that officer and chose not to. And if you read the PSR carefully, and if you read the sentencing transcript carefully, we don't really know if his hand was on the gun. The officer didn't know if there was a gun. He said he saw one hand swinging and he saw the other hand not swinging. And again, if you read the probation officer's description, he landed on his arm and then didn't relinquish control of it. Was that the gun? I would say if you read that sentence, the gun doesn't occur in that sentence. He didn't relinquish control of his arm because it was pinned under him. And if we look, Your Honor, at the cases where there actually was a real struggle. And if you look at the Matchett case, you know, that was a three-minute struggle with the officers. If you look at the Lee case, and again, these are all cases that the parties cite in their briefs, the defendant pushed past officers, a long struggle with multiple police officers. I've got to tell you, I don't see any difference if a gun is involved, whether the struggle is three minutes or three seconds. It's a gun. Well, and Your Honor, I think the Riaz Ortega case responds to that. If you run, an officer will very likely chase you. That's what they're trained to do. The officer is a police officer. He almost certainly will have a gun. So, Your Honor, I would say that adopting that rule converts this into any situation in which you run from a police officer, which will almost always result in the officer apprehending you in a somewhat violent way. And in that universe of facts, this actually falls far on the other end of the spectrum. He wasn't tackled. He fell down and started shouting, I give up, I give up. And if these facts, if on those facts are enough for this enhancement to apply, it really does just collapse into an enhancement saying if you run from the police in any way. And I will also submit, Your Honor, he started running before the police showed up. He started running. The officer noticed him running and then pursued. How would you have us view the evidence that he was hesitant in pulling his arm out from under him so he could be handcuffed? Well, and, Your Honor, I'd say one way to view that evidence is the district court didn't make any findings regarding that. The district court... But this evidence is uncontested, isn't it? I mean, there's nothing to oppose it. He'd made a ruling and, of course, we have to give him the benefit of any inferences consistent with his final decision. Actually, Your Honor, I would say under rule, criminal rule 32, was it 32I, 3B, the district court must resolve these facts. But they have to be resolved because it's not contested. Well, and, Your Honor, he fell down. An officer landed on top of him. And this, Your Honor, is I'd say where it is somewhat relevant that he's 125 pounds. The question of whether he was intentionally keeping his arm there to try and grab the gun, to try and keep it from the officer, to try and do whatever, or whether someone who weighs possibly twice as much as he does lands on top of him and he can't get his arm out. It was also, Your Honor, uncontested. It was both in the PSR and in our proffer to the district court that he was saying, I give up, I give up. The PSR didn't use those words, but the PSR, uncontested, Your Honor, did say that he was surrendering. His actions are not matching his words. His actions, Your Honor, are matching his words if he physically can't move his arm. But the officer doesn't know that. I mean, first of all, if I'm an officer and I know a gun's been discharged and I don't know for a fact he doesn't have it, I ain't getting off of him until I've seen both hands. He got him handcuffed. I mean, that's just simple officer safety, it seems to me. Well, and Your Honor, I would say there, again, is a fact there that the district court didn't find. If you look at the uncontested PSR, there's no evidence that the officer was responding to a call of a gunshot or that he heard a gunshot. It said that Mr. Dennings was running, an officer sees someone running, and I think naturally thinks this is suspicious. So we don't know, and again, this is partially why, again, if this court really thinks, we submit, as we say in our briefs, that even taking these facts in the light most favorable to the government, there isn't enough here for the enhancement, and this court should rule that as a matter of law. But really, if Your Honors think that it's very relevant whether there was an actual struggle or whether he just submitted, whether the officer knew he had a gun, whether the officer actually saw the gun or didn't see the gun, then this, Your Honors, needs to be remanded because these are all facts that the district court didn't resolve. The officer didn't testify. I mean, there is one human being, other than Mr. Dennings himself, who could really provide clarity as to what happened that day, and the government chose not to bring him. So was there any objection to the pre-sentence report? Any objections, Your Honor? I'm sorry, what was your question? Is there, were there any objections to the pre-sentence report? Did you offer any contradictory evidence? Your Honor, we objected to the enhancement, and so that encompasses, you know, the legal and factual application. And again, if you look at our proper... Well, you don't get to make just a general objection and not give any specifics and say, after the fact, when you get to the appellate court, you now get to go back and explore all the factual idiosyncrasies that you may have picked up since then, when you never made a specific objection, you never offered any evidence. And, Your Honor, the burden is on the government to apply the enhancement, and the law obligates the district court to make those findings. It is not up to us to attack a factual premise when the government doesn't even bring a witness in to testify. And, Your Honor, I think a fair reading of the sentencing transcript demonstrates that we were not simply saying, this wasn't a pure legal objection. Your Honor, it's double counting. Your Honor, it's simply unfair to apply this because of his tragic family situation and the like. This was an objection to this enhancement on these facts. And the undisputed facts, the very few undisputed facts, were that the gun was discharged. We don't know who fired it, but it was discharged. The gun was actually inoperable after that. When they found the gun, there was a round jammed in the cylinder, so the gun couldn't operate. Mr. Dennings ran, an officer chased him. Mr. Dennings fell down, the officer landed on top of him. He shouted, I give up, I give up. And he couldn't, or chose not to, perhaps that is ambiguous, get his arm out from under him. And the entire sentencing, Your Honor, was talking about that factual universe. So, again, this wasn't just a we don't need to be heard objection. And if the question is there's not enough evidence here in the record, then the law is clear. It was the government's burden to put that evidence on the record. The enhancement applies if and only if they present evidence such that it should apply. And they didn't. And so the enhancement shouldn't apply. We respectfully ask that you remand this case for resentencing without application of the 3C1.2 enhancement. Okay. Thank you, Mr. Brignac. You've got some rebuttal time left. Ms. Okereke, is that right? That's correct. We're glad to hear from you. May it please the court, Amy Okereke for Appellee United States. This case is about, or more than near flight, and even more than near armed flight. The defendant in this case did a lot more than that. And furthermore, to the extent that any case finds that near armed flight is not enough, it certainly is quite a ways of getting you to apply for this enhancement. And as to the facts of this case, the facts are key here. And these are facts that were undisputed. The joint appendix and the sentencing transcript make clear that the court adopted the PSR in full. And there was no objection to that. Furthermore, the sentencing... Did he ever say that? I looked for that. I never saw where he adopted the report as factual and accurate. Did I miss that? I direct the court's attention to page 53 of the joint appendix. And at page 53... What line? Let's see, this is line 17. There it states, the court adopts the findings in the pre-sentence report as credible and reliable. Okay. And in addition to the court adopting the full facts of the PSR, as well, defense counsel stipulated to the factual basis that the government presented. And that is at page 29 of the joint appendix. I hate to interrupt you, Kim, but your interpretation of 53 is that he's finding all the facts as accurate and credible about that statement. Is that what the language this judge uses to make that kind of finding? That's correct. Okay. And in addition, the defense stipulated to the factual proper presented by the government. And that's at page 29 of the joint appendix. And that was during sentencing. What line on page 29? Sure, this is at line 6. Ms. Allen, counsel for the defendant, stated, Your Honor, we stipulate to the factual basis. And this is after the government had presented the full facts of this case, including that the defendant was armed. But that was the factual basis for the crime itself, wasn't it? That's correct. Running with a loaded weapon in his hand. And to clarify, the loaded weapon was in his jacket pocket while he was running, as the PSR makes clear. So while he was running, he did not need to have his hand in his pocket. But nonetheless, his pocket was still in his hand. And these are the facts that the court considered when determining whether or not the enhancement should apply. The PSR doesn't state that there was a struggle. So if that's true, one could accept his argument that he couldn't get his arm out from under him.  The defendant immediately did not relinquish control of his arm after the police officers attempted to take it out. That doesn't amount to a struggle. Well, I'd furthermore note that in addition to the note in the PSR, even during sentencing, defense counsel admits that the defendant was resisting arrest. And this is at page 44 of the joint appendix. The court states he resisted arrest, though, did he not? This is at line 15. Defense counsel responds, yes, he did, Your Honor. And we don't deny that. Therefore, the interpretation that the court made of the defendant with his hand in his pocket failing to relinquish control, those facts the court reasonably could have determined was resisting. And as well, defense counsel admitted as much during sentencing. Do we know that that is from facts in the record? Do we know that his hand was inside the pocket or was it outside? The PSR, direct the court to the, this is at page 79 of the joint appendix. I'm sorry, page 78, which states that the defendant's right hand was not empty, freely swinging like his left hand. And the officer was unable to determine if the defendant was digging in his pocket or holding on to something. So in that sentence there, the PSR demonstrated that the defendant did have his hand in his pocket as he was running. And as well, in addition to the defendant's conduct during flight, the court as well could not ignore what the defendant had just done moments prior to fleeing. The record reflects that just moments prior to fleeing, the defendant went up to an individual, brought a gun out, hit that individual on the hand with the gun. And in that interaction, he claims that the gun accidentally went off. So the substantial risk of harm that was created when the defendant then started running was in fact realized just moments prior. When during a struggle while he was standing, not even in flight and not even running, during an altercation with another individual, he claims that a gun accidentally went off. And the same risk is the risk that the court determined as well existed while the defendant was running. And again, now in a state of panic with adrenaline pumping, where he hears sirens. So if the record evidence was only that there was a discharge of a firearm and the defendant ran, you don't have any evidence about resisting arrest, no evidence about trying to touch a firearm or some other unknown object while they're running. They're just running. Is that sufficient in your view to come within the guidelines? That is another situation. And here we have more. Right, that's why I ask you about it. Yes, with the defendant running without his hand in a pocket, simply with his hands free, that's another situation that perhaps the enhancement may not apply under those facts. Here though, we have a situation that is plus, that is more. We have a defendant that, again, I believe the defendant would like to characterize the hypothetical defendant to which this enhancement should apply. But the court did not evaluate a hypothetical defendant. The court evaluated this defendant. And this defendant, in the moments after he had just again realized the risk of engaging in or having an armed weapon on you and struggling with another individual, he then pursues and engages in flight. And thereafter, that was not the only risk. There was the risk during flight. But as well, he put the officers at risk when the officers attempted to subdue him and he would not immediately relinquish control of his arm. And defense in their brief has relied on, excuse me, the appellant has relied on the Oseguro case. And in that's a Ninth Circuit case. In that case, the court evaluated the application of this enhancement to two different defendants. And in one situation, the court found that the enhancement applied, where one defendant weaved through traffic for four to six car lengths. And as to the other defendant, the court found that and suggested that resisting arrest from a police officer was sufficient enough for this enhancement to apply. And that's without having a weapon. Here we have even more. And in that case, the court ultimately did not apply the enhancement to that defendant. But it was due to a lack of facts as to whether the defendant fell intentionally when being apprehended by police officers or whether he actively resisted. But the court did find that resisting was sufficient alone without a loaded weapon, which is the case that we have here. And as well, in addition to the Ninth Circuit Oseguro case, multiple other courts have found that activity that does not even reach the level of what we have here, the enhancement appropriately applied. I direct the court's attention to the Eighth Circuit case in Bates. And as the court noted, perhaps the struggle was longer than at least the record in this case demonstrates. But the court did provide in Bates that resisting arrest and reaching for a firearm was sufficient for this enhancement to apply. And here we have even more than reaching for a firearm. The defendant didn't reach. His hand was already in his pocket, again, in his jacket pocket, where arguably it did not even need to be while he was running. And I believe that the court could have made, the district court could have made a reasonable inference that his hand was on the gun while he was running or that his hand in the same pocket presented a risk to not only the public, but as well to officers when they ultimately subdued the defendant. Where in the record is evidence of what you just said that his hand was in his pocket? Well, again, I refer the court to the PSR and the facts in the PSR. And I'm looking at page 78 of 78 to 79 of the Joint Appendix. And in that portion of the appendix, the record states that during the chase, the officer observed the defendant with his right hand not empty and freely swinging like his left hand and was unable to determine if his hand was digging in his pocket or holding onto something.  The officers perceived that he had his hand or believed that he had his hand in his pocket as he was running. He said that he could not determine. Well, he could not determine if he was digging in his pocket or holding onto something. However, though, with the predicate being that his hand is in his pocket, but the officer could not tell whether he was holding onto the gun or whether his hand was in his pocket for something else. And this is the same pocket that the officers later retrieved the .22 caliber firearm. And again, I'd highlight that the defendant's hand was in his jacket pocket. When the altercation where he was involved in a struggle with another individual that moments preceding him fleeing, the weapon appeared to be in his pant pocket. But the PSR reflects that later, the weapon was found in his jacket pocket. And that's significant. That's significant in that if the defendant is running and his hand is in his pocket, the weapon is not facing down. It's the weapon is likely facing outwards towards the public. And these are facts that the district court heard. And the district court made a determination on these facts that the enhancement was warranted and should apply. We've read your brief. Is there anything else that you wanted to tell us? If the court has no further questions, I'd rest on the brief and also note that the government respectfully requests that the court affirm the district court's application of the enhancement in this matter. Okay, thank you very much, Mr. Brignac. You've got some rebuttal time. Thank you, your honor. I think Judge Floyd, you got into it. The government and we fundamentally read Joint Appendix 78 differently. Joint Appendix 78 says the officer, who again was not brought to testify, couldn't determine. We don't know. There is not evidence that his hand was in his pocket. And the district court made no findings on that point. If, upon applying the enhancement, the district court had said, I find based on the PSR that I think he was reaching for the gun, then I'm in a fundamentally different position up here. But this court reviews facts and the district court didn't make findings. And the only thing in the record demonstrates that it's unknown. But apparently he adopted the pre-sentence report and what was stated in it as factual and accurate. And two points, your honor. Two points, your honor. I think a fair reading of Joint Appendix 78-79 says that it was unknown if his hand was in his pocket. That's the word, unable to determine, is the word that was used. I would also note, your honor, that the government says, and I honestly have not appeared in front of Judge Howard enough to say, but he made that statement after talking about the variance and after talking about the sentence. I do think it fits somewhat more into boilerplate and his sentencing discussion than it does in direct response. If he had said that right after this discussion about the enhancement, I would also say, your honor, I think you caught this, but at Joint Appendix 29, that was not at sentencing. That was at the plea. And that was simply the government giving the factual recitation of the elements of the crime. So that was not an admission to anything. In Joint Appendix 44, they say that we acknowledge that he was resisting arrest. He was running, your honor. And I think it's a fair assessment that he kept running when he saw an officer chasing him, i.e. he was resisting arrest until he tripped and fell down. But if you look at that entire sentencing discussion, we were not in any way acknowledging that there was an actual struggle. In fact, we proffered that he fell down, the officer landed on him and he was shouting, I give up, I give up. So that, to the extent, please do not read this record to say that this was a struggle. And your honor, Judge Agee, I think you asked the government, you know, what would be the situation if the gun had been discharged and he ran, but then there wasn't a struggle. And I think the government acknowledged as it had to under the plain language of the enhancement, it probably wouldn't apply. We would say it doesn't apply. And then that's this case. Because Joint Appendix 7879. Well, it's almost this case. Because it's not just the, well, just wait a minute. It's not just that he fell down and he was resisting, but if you accept the reading of the PSR that he's got his hand in his pocket where the gun was while he's running, that's an additional fact. And your honor, if I may respond, thank you. And this may just come down to how the five of us read this language in the PSR. And it just says, the officer observed his right hand was not empty and freely swinging like his left hand, but was unable to determine if he was digging in his pocket or holding onto something. And a PSR statement that an officer wasn't able to determine something and the district court making no specific factual findings about what the officer was unable to determine, there's no there there. There's no factual basis to support the idea that he was holding onto the gun or that upon having the officer land on him, he was resisting arrest. So again, your honors, we would just simply ask that this court remand for resentencing without application of the enhancement. Thank you very much. We're going to come down a great counsel and move on to our next case.
judges: G. Steven Agee, Henry F. Floyd, William B. Traxler Jr.